682 A.2d 378

**Leo J. KITUSKIE**

v.

**Scott K. CORBMAN, Esquire and Garfinkle, Corbman, Greenberg and Jurikson, P.C., Appellants.**

Superior Court of Pennsylvania.

Argued June 26, 1996.

Filed Aug. 29, 1996.

468

H. Robert Fiebach, Philadelphia, for appellants.

Fred J. Silverman, Plymouth Meeting, for appellee.

Before DEL SOLE, TAMILIA and BROSKY, JJ.

BROSKY, Judge.

Scott Corbman, Esquire, ("Corbman") and the law firm of Garfinkle, Corbman, Greenberg and Jurikson, P.C. ("Garfinkle firm") appeal from the judgment of the trial court following a $2,300,000 jury verdict in favor of plaintiff-appellee Leo J. Kituskie, D.M.D. ("Kituskie") and against appellants.

Corbman is an attorney licensed to practice in Pennsylvania; he was a principal/shareholder in the Garfinkle firm, which has its principal place of business in Philadelphia, PA.

Kituskie is a practicing periodontist and a Pennsylvania resident.

On September 3, 1989 Kituskie suffered personal injuries as a result of an automobile accident in San Jose, California;[1] the other driver involved was California resident Evan Mark Trapp ("Trapp"). Trapp lost control of his vehicle and drove into the path of Kituskie's car; the two vehicles collided. Trapp was driving while intoxicated and was driving at a high rate of speed.

Kituskie returned to the Philadelphia area and began treatment with local health care providers. On September 9, 1989 Kituskie retained Corbman as counsel in Kituskie's claim against Trapp for personal injuries sustained in the automobile accident. Corbman obtained Kituskie's medical reports and records of out-of-pocket expenses. Corbman then made a claim on Kituskie's behalf against Trapp's insurance carrier, California State Automobile Association ("CSSA"). Negotiations took place over the summer of 1989.

Corbman learned that Trapp had a $25,000 liability policy with CSAA. Although counsel for all parties stipulated at trial that Trapp's liability limit with CSAA was $25,000, the jury was not permitted to hear this evidence. Corbman was under the belief that the California statute of limitations for personal injury actions was two years (as is the statute of limitations for Pennsylvania), but the California statute of limitations was only one year. On approximately September 17, 1990 Corbman learned that the California statute of limitations was only one year (and that it had expired in the instant case on September 3, 1990). After the expiration of the one year statute of limitations CSAA informed Corbman that it refused to make any settlement offer. Corbman then met with Kituskie and told him that his personal injury claim had

1. As a result of the accident Kituskie suffers from a degenerative, arthritic back condition and he has had to reduce his work schedule.

been terminated since no suit was filed nor was settlement reached within the applicable one year period. Corbman advised Kituskie to seek the services of another attorney to assert a claim for legal malpractice against Corbman.

Kituskie filed a claim against United States Fidelity & Guaranty Co. ("USF & G"), which was the automobile insurance carrier for his father's car. Following arbitration, Kituskie was awarded $200,000, which was the limit of underinsured benefits available. Kituskie then retained new counsel and sued Corbman and the Garfinkle firm, in Montgomery County Common Pleas Court, on August 28, 1991 for legal malpractice.

Prior to jury selection counsel for both sides presented motions *in limine* requesting that each side's expert be precluded from testifying on the issue of the possibility of CSAA settling within the policy limits (the motions did not deal with the issue of collectibility of the underlying judgment in a malpractice claim against an attorney). The trial court stated at the start of the jury trial that, "[T]he issue of collectibility or potential jury verdict or settlement presented itself yesterday when the Court was conferring with counsel. This Court gave counsel last night and the rest of the day yesterday to delve into this issue to see if they could find authority for their respective positions." N.T., 1/6/95, at 11. The trial court ultimately determined that collectibility of the underlying judgment was not an issue in the instant case, and that evidence would not be admitted regarding the issue of collectibility. The trial court then granted both motions *in limine.*

The jury trial lasted from January 6, 1995 through January 11, 1995; at its conclusion the jury awarded Kituskie $2,300,-000. This appeal followed.

Appellants' statement of questions involved is as follows:

1. Whether the lower court erred as a matter of law by failing to recognize that "collectibility" of any judgment which would have been obtained in the underlying matter is an essential element of a legal malpractice claim.

2. Whether the lower court erred as a matter of law by precluding evidence that any judgment which would have been obtained in the underlying matter would not have been collectible beyond the $25,000 insurance policy applicable to the accident.

3. Whether the lower court erred as a matter of law in failing to instruct the jury that Kituskie's claims against Corbman were barred by the doctrine of collateral estoppel and that, therefore, a directed verdict should have been entered in favor of Corbman.

4. Whether the lower court erred as a matter of law by failing to reduce the judgment by the amount recovered by Kituskie in a related arbitration against Kituskie's own insurance carrier under his underinsured motorist coverage.

Appellants' Brief at 3. We vacate the judgment of the trial court and remand for a hearing regarding the collectibility of the underlying judgment (*i.e.*, any judgment that could have been recoverable from Trapp).

Appellants' issues number one and two are claims that (a) the trial court erred in holding that collectibility of the underlying judgment was not an essential element of a legal malpractice claim, and, (b) the trial court erred in holding that Kituskie had no burden to prove collectibility and that appellants were not permitted to prove that the underlying judgment would have been uncollectible.

Our Supreme Court stated in *Rizzo v. Haines*, 520 Pa. 484, 555 A.2d 58 (1989),

[A]n allegedly aggrieved client must establish three elements in order to recover for legal malpractice. They are:

1. The employment of the attorney or other basis for duty;

2. The failure of the attorney to exercise ordinary skill and knowledge; and

3. That such negligence was the proximate cause of damage to the plaintiff.

. . . .

[A]n essential element of the cause of action, whether the action be denominated in assumpsit or trespass, is proof of actual loss.

*Id.* at 498–500, 504–06, 555 A.2d at 65, 68.

Our Court stated in *Ammon v. McCloskey,* 440 Pa.Super. 251, 655 A.2d 549 (1995),

In any cause of action for [legal] malpractice, some harm must be shown to have occurred to the client. . . .

The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm—not yet realized—does not suffice to create a cause of action for negligence. Hence, until the client suffers appreciable harm as a consequence of his attorney's negligence, the client cannot establish a cause of action for malpractice. [Citations omitted.]

*Id.* at 257–58, 655 A.2d at 552.

■ "Additionally, the plaintiff must be able to establish by a preponderance of the evidence that he or she would have prevailed in the underlying litigation." *Rogers v. Williams,* 420 Pa.Super. 396, 401, 616 A.2d 1031, 1034 (1992).

Our Court held in *McCartney v. Dunn & Conner, Inc.,* 386 Pa.Super. 563, 563 A.2d 525 (1989), that in a legal malpractice action the plaintiff must establish that he or she would have recovered a judgment in the underlying action; the damages are measured by the "lost judgment." *Id.* at 568, 563 A.2d at 528.

■ We will not permit legal malpractice actions based upon speculations regarding settlement negotiations. *Id.* at 572–74, 563 A.2d at 530.

Our review of Pennsylvania caselaw, statutes and court rules reveals that the issue of the collectibility of an underlying judgment in a legal malpractice action has not been previously addressed.

Other jurisdictions around the country have included collectibility as an element to be proved or disproved in a legal malpractice case. California, Colorado, Connecticut, Florida,

Georgia, Illinois, Iowa, Massachusetts, New York, North Carolina, Tennessee, Texas and Washington place the burden upon the plaintiff (in a malpractice action against an attorney) to prove collectibility of the underlying judgment. *See: DiPalma v. Seldman*, 27 Cal.App.4th 1499, 33 Cal.Rptr.2d 219 (1994); *Lawson v. Sigfrid*, 83 Colo. 116, 262 P. 1018 (1927); *Palmieri v. Winnick*, 40 Conn.Supp. 144, 482 A.2d 1229 (1984); *McDow v. Dixon*, 138 Ga.App. 338, 226 S.E.2d 145 (1976); *Sheppard v. Krol*, 218 Ill.App.3d 254, 161 Ill.Dec. 85, 578 N.E.2d 212 (1991); *Beeck v. Aquaslide 'N' Dive Corp.*, 350 N.W.2d 149 (Iowa 1984); *Jernigan v. Giard*, 398 Mass. 721, 500 N.E.2d 806 (1986); *Chiaffi v. Wexler, Bergerman and Crucet*, 116 A.D.2d 614, 497 N.Y.S.2d 703 (1986); *Rorrer v. Cooke*, 313 N.C. 338, 329 S.E.2d 355 (1985); *Payne v. Lee*, 686 F.Supp. 677 (E.D.Tenn.1988); *Mackie v. McKenzie*, 900 S.W.2d 445 (Tex.App.1995); and, *Tilly v. Doe*, 49 Wash.App. 727, 746 P.2d 323 (1987). Maine, Michigan and New Jersey place the burden on the defendant-attorney to assert the affirmative defense of collectibility (*i.e.*, the defendant-attorney must prove that the plaintiff could not have recovered the full value of the underlying judgment). *See: Jourdain v. Dineen*, 527 A.2d 1304 (Me.1987); *Teodorescu v. Bushnell, Gage, Reizen and Byington*, 201 Mich.App. 260, 506 N.W.2d 275 (1993); and, *Hoppe v. Ranzini*, 158 N.J.Super. 158, 385 A.2d 913 (1978).

▮▮▮ We believe that in legal malpractice actions in Pennsylvania, it is time to add the requirement of placing upon the attorney being sued the burden of disproving the collectibility of the underlying judgment.[2] While we recognize that the collectibility of a judgment is not an issue in other types of cases in this Commonwealth, a legal malpractice action is distinctly different from an ordinary lawsuit. The attorney being sued in a malpractice action did not cause the initial harm or damage to the plaintiff; a third party caused that

2. This would add the Commonwealth to the list, of approximately half of the states in this country, that require the plaintiff or defendant-attorney to prove or disprove the collectibility of the underlying judgment.

harm (in the instant case the third party was Trapp). In the ordinary course of events leading to a malpractice action the plaintiff then retains the attorney involved and the attorney fails to exercise ordinary skill and knowledge in handling the plaintiff's case (the attorney may have failed to pursue the action against the third party, as in the instant case, or may have negligently handled an action against a third party); the attorney's negligence was the proximate cause of the plaintiff's loss since the negligence prevented the plaintiff from being properly compensated for his or her losses (Corbman's negligence was the proximate cause of Kituskie's losses and this element was adequately proven at trial). However, the plaintiff should only be compensated for his or her actual losses. *Rizzo v. Haines, supra.* The legal malpractice action actually contains a "case within a case" since the plaintiff must initially establish, by a preponderance of the evidence, that he or she would have recovered a judgment in the underlying action (in the instant case the underlying action would have been against Trapp); the damages that the plaintiff suffered are measured by the "lost judgment". *McCartney v. Dunn & Conner, Inc., supra.* The attorney (the party being sued in the malpractice action) who negligently handled the plaintiff's case must be held responsible for the "lost judgment". However, it would be inequitable for the plaintiff to be able to obtain a judgment, against the attorney, which is greater than the judgment that the plaintiff could have collected from the third party; the plaintiff would be receiving a windfall at the attorney's expense. For that reason, we now require the injection of the issue of collectibility of the underlying judgment in legal malpractice actions.

We find that the burden of proof should be upon the attorney to plead and prove, by a preponderance of the evidence, that the underlying judgment was not collectible;[3] the plaintiff should not have the added burden of proving collectibility since he or she has already been allegedly wronged by two parties (the third party and the attorney).

3. New Jersey requires this burden of proof, and we find that it would be appropriate to apply it in Pennsylvania. *Hoppe v. Ranzini, supra.*

In a legal malpractice action the jury should consider the issue of malpractice and the amount of a judgment that would have been recoverable against the third party in the underlying action. If the defendant-attorney raises the affirmative defense of non-collectibility of the underlying judgment, then the jury must also consider whether or not the underlying judgment was collectible.[4]

In the instant case the jury was not permitted to hear evidence regarding collectibility of the underlying judgment; consequently, the amount of the jury verdict did not reflect any finding on that issue. Hence, pursuant to appellants' issue numbers one and two we must vacate the judgment of the trial court and remand this case so that the trial court may conduct a hearing regarding the collectibility of the underlying judgment.[5]

Appellants' issue number three is a claim that the trial court erred in failing to instruct the jury to enter a directed verdict since Kituskie "was barred by the doctrine of collateral estoppel from collecting twice for damages resulting from the underlying accident." Appellants' Brief at 26. Appellants aver that Kituskie should not be permitted to recover damages beyond the $200,000, awarded by an arbitration panel, in underinsured motorist benefits under Kituskie's father's USF & G automobile insurance policy.[6]

4. In the instant case it is possible to conclude that appellants pled the affirmative defense of non-collectibility since their New Matter stated that, "Plaintiff's cause of action herein must fail where no damages have accrued to plaintiff as a result of any alleged act/or failure to act on the part of" appellants. Appellants' New Matter, par. 14. However, even if the affirmative defense had not been pled, and Kituskie had objected to the injection of the non-collectibility issue, appellants could have amended their pleadings to clearly include the affirmative defense of non-collectibility. Pa.R.C.P. 1033.

5. The trial court should consider, *inter alia*, whether there was a $25,000 liability limit on Trapp's CSAA policy, and, Trapp's assets.
    We also note that normally the jury would have deliberated upon the issue of collectibility, but since the instant jury has been excused the trial judge must make the determination regarding collectibility.

6. Appellants concede that Kituskie "had a right to claim coverage under [his father's] policy." Appellants' Brief at 27.

Our Court stated in *Sterling v. Fineman,* 428 Pa.Super. 233, 630 A.2d 1224 (1993),

The five requirements of the collateral estoppel doctrine are as follows:

Collateral estoppel applies if (1) the issue decided in the prior case is identical to one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding and (5) the determination in the prior proceeding was essential to the judgment. [Citations omitted.]

*Id.* at 240, n. 4, 630 A.2d at 1228, n. 4.

■ "Collateral estoppel, sometimes referred to as issue preclusion, operates to prevent a question of law or an issue of fact which has once been litigated and adjudicated finally in a court of competent jurisdiction from being relitigated in a subsequent suit." *Ammon v. McCloskey,* 440 Pa.Super. 251, 260, 655 A.2d 549, 553 (1995).

■ Pa.R.C.P. 1030(a) provides that the affirmative defenses of estoppel and res judicata "shall be pleaded in a responsive pleading under the heading 'New Matter'." *Id.* Appellants never pled the affirmative defense of collateral estoppel in their New Matter. Furthermore, appellants did not attempt to amend their complaint after the entry of the arbitration award. Hence, since the affirmative defense of collateral estoppel was never pled, it is waived. Accordingly, we find appellants' third issue to be meritless.

*Arguendo,* even if appellants had not waived the affirmative defense of collateral estoppel, we would have found their third issue to be meritless based upon our independent review of the instant record, the relevant caselaw, and the December 12,

1995 trial court opinion of the Honorable S. Gerald Corso of the Court of Common Pleas of Montgomery County.[7]

■ Appellants' issue number four is a claim that the trial court erred in not subtracting the $200,000 (in underinsured benefits) awarded in arbitration from the $2,300,000 jury verdict. Appellants aver that adding the $200,000 to the jury verdict creates a "windfall" gain for Kituskie. Appellants' Brief at 31. However, appellants cite to no legal authority in support of their claim.

■ Issues not properly developed or argued in the argument section of an appellate brief are waived. *Commonwealth v. Cassidy*, 423 Pa.Super. 1, 620 A.2d 9 (1993); *Commonwealth v. Anderson*, 381 Pa.Super. 1, 552 A.2d 1064 (1988); *Commonwealth v. Balch*, 328 Pa.Super. 71, 476 A.2d 458 (1984). Since appellants have failed to cite to any legal authority in support of their fourth issue, we find it to be waived.

In summary, pursuant to appellants' issue numbers one and two, we vacate the judgment of the trial court and remand for a hearing regarding the collectibility of the underlying judgment (that could have been recovered from Trapp). As discussed, *supra*, appellants have the burden of proving, by a preponderance of the evidence, that the underlying judgment was not collectible.

Judgment vacated. Case remanded for a hearing consistent with the directives of this Opinion. Jurisdiction relinquished.

DEL SOLE, J., files a concurring opinion.

DEL SOLE, Judge, concurring.

I join the majority in holding that a defendant may introduce evidence of collectibility in a legal malpractice case. I view this as recognition of the traditional role of tort litigation, to compensate for the extent of the loss.

7. We note a typographical error in Judge Corso's opinion on the last line at page eight, wherein the word "underinsured" was mistakenly inserted in place of the word "uninsured".

By the same token, the award should not be reduced by the fees that the defendant lawyer would have collected absent negligence. To do so would diminish the client's recovery since fees would be required for current counsel.

Further, I agree with the majority that the arbitration award under the Underinsured Motorists section of the applicable policy does not operate to bar a recovery in excess of the award.

In the event the trial court, on remand, determines that Mr. Trapp has sufficient assets to pay the $2,300,000 award, it would be subject to any right of subrogation the underinsured carrier may exercise. If there are no such rights, then the plaintiff, not the defendant, should receive the value of that bargain.